IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIMPY ONDRUSEK, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> UNITED STATES ARMY § <br> CORPS OF ENGINEERS, *et al.*, § <br> § <br> Defendants. § | Civil Action No. 3:22-CV-1874-N |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs Timpy Ondrusek and Barbara Ann Ondrusek Wolfe's application for preliminary injunction against the U.S. Army Corps of Engineers (the "Corps"), Jonathan S. Stover,[1] and the City of Dallas [3]. The Court concludes that Plaintiffs lack standing and accordingly denies relief.

### I. THE ORIGINS OF PLAINTIFFS' SUIT

The Corps and the City of Dallas are partners on the long-running Dallas Floodway Extension ("DFE") project. Compl. ¶¶ 22–23 [1]. The project's purpose is to lower flood risk in the area by constructing a system of wetlands and levees. *Id.* ¶ 21. Plaintiffs own property in the Dallas area, and in April 2022, the City initiated state court condemnation proceedings against Plaintiffs' property for the construction of the Cadillac Heights Levee. *Id.* ¶¶ 52–53.

---

[1] Corps District Commander, Fort Worth District.

MEMORANDUM OPINION AND ORDER – PAGE 1

In this suit, Plaintiffs contend that that Defendants have violated the Clean Water Act[2] ("CWA") and National Environmental Policy Act[3] ("NEPA") by proceeding with construction and condemnation before updating their environmental analyses, last prepared in 2003.  *Id.* ¶¶ 16, 80.  Though the complaint references the Fifth Amendment, *see id.*, Plaintiffs have not pled an independent constitutional claim.  *See id.* ¶¶ 8 (referencing the APA, CWA, and NEPA, and not the Constitution, for purposes of federal jurisdiction), 107–17 (stating counts only under the CWA and NEPA).

The Court previously denied Plaintiffs' motion for temporary restraining order for failure to demonstrate a substantial threat of imminent and irreparable harm.  Order Den. TRO 2 [14].  In the instant motion, Plaintiffs seek preliminary injunctive relief "directing the Corps to fulfill its responsibilities under the CWA and prohibiting the Corps' illegal construction . . . without first conducting the required analysis and supplementing the existing environmental review documents."  App. TRO, Prelim. & Perm. Injs. 30 [3].  As a threshold matter, Defendants challenge Plaintiffs' Article III standing to bring this lawsuit, a prerequisite to the Court's subject matter jurisdiction.[4]

## II.  THE LEGAL STANDARD FOR ARTICLE III STANDING

"Pursuant to Article III of the Constitution, federal courts may only decide live cases and controversies."  *BlueStar Cabinets, Inc. v. Jaddou*, 2022 WL 4364734, at *2 (5th Cir. 2022) (citing U.S. CONST. art. III, § 2; *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir.

---

[2] Codified at 33 U.S.C. §§ 1251, *et seq.*
[3] Codified at 42 U.S.C. §§ 4321, *et seq.*
[4] Because standing is dispositive, the Court need not reach Defendants' other arguments. *See infra* Part III.

2020)). To satisfy the case-or-controversy requirement, a plaintiff "must have a 'personal stake' in the case — in other words, standing" to sue. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)) (internal quotations omitted). At minimum, standing requires: "(1) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).

A concrete injury is one that "actually exist[s]," even if intangible, and a particularized injury "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (citations and internal quotations omitted). "F]uture harm can satisfy the concrete-harm requirement . . . so long as the risk of harm is sufficiently imminent and substantial." *Transunion*, 141 S. Ct. at 2210. Imminent injuries may not be "too speculative" — the injury must be "certainly impending." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (emphasis omitted).

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right *in vacuo* — is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Thus, while a statute may confer a private cause of action, a plaintiff must articulate some concrete harm beyond a mere procedural violation to assert that cause of action in federal court. *Transunion*, 141 S. Ct. at 2205. Further, that additional harm must occur "*because of* the defendant's violation of federal law." *Id.* (emphasis added). To hold otherwise would create "a

freewheeling power to hold defendants accountable for legal infractions," *id.* (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 338 (7th Cir. 2019)), counter to Article III's "admonition" that "federal courts are courts of limited jurisdiction." *S. Pacific Transp. Co. v. Young*, 890 F.2d 777, 781 (5th Cir. 1989). And finally, Article III requires that a favorable decision would "likely" redress the plaintiff's injury in fact, as opposed to the possibility of relief being merely "speculative" or "attenuated." *Lefebure v. D'Aquilla*, 15 F.4th 650, 653, 659 (5th Cir. 2021) (citations omitted).

"Plaintiffs always have the burden to establish standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017); *see also Lujan*, 504 U.S. at 561. In other words, plaintiffs may invoke the subject matter jurisdiction of the federal courts only if they successfully demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Daves*, 22 F.4th at 542 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). At the preliminary injunction stage, plaintiffs must make a "clear showing" of their standing to maintain the injunction. *Daves*, 22 F.4th at 542 (quoting *Barber*, 860 F.3d at 352). If the plaintiff does not establish standing, the Court then lacks subject matter jurisdiction and thus cannot reach the merits of the parties' arguments. *Barber*, 860 F.3d at 352 (quoting *Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015)). "If the [C]ourt finds that it lacks subject matter jurisdiction, it has a duty to dismiss the case," *McDonald v. Asvestats*, 1997 WL 74711, at *1 (N.D. Tex. 1997) (citing *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996); Fed. R. Civ. P. 12(h)(3)), and "the proper course is to dismiss the case without prejudice." *Fort Bend. Cnty. v. U.S.*

*Army Corps of Engineers*, --- F.4th ---, 2023 WL 1465325, at *6 n.4 (5th Cir. 2023) (citing *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020)).

### III. PLAINTIFFS HAVE NOT ESTABLISHED STANDING

In support of their standing to sue, Plaintiffs assert environmental injuries as well as two theories of harm based on the condemnation action: first, that the CWA and NEPA violations render the condemnation unconstitutional, and second, economic loss from the deprivation of their property and the devaluation of their remaining parcel.

#### A. Plaintiffs' Environmental Harms Are Too Speculative

***1. The Contents of the Complaint.*** – "In environmental cases, courts must carefully distinguish between injury to the petitioner and injury to the environment." *Ctr. for Bio. Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019). An environmental injury may be sufficiently particularized to Plaintiffs if it implicates their personal "aesthetic, recreational, [or] scientific interests," and they also must "have been actually harmed or imminently will be." *Id.* (citations omitted).

Plaintiffs allege that there is "a serious risk that environmental impacts will be overlooked" and that they "expect to suffer the environmental consequences." Compl. ¶ 13. They posit harms such as "unnecessary flooding" and "damage to surface and subsurface soils, surface and groundwater, and surrounding land . . . which Plaintiffs will continue to own." *Id.* However, the complaint lacks any details about how specific aspects of the project may cause those harms, how those harms will affect any of Plaintiffs' unique interests in the environment, or how likely the harms are to occur. Indeed, Plaintiffs' allegations phrase the environmental risks as unsubstantiated possibilities. *Id.*

("environmental consequences the project *may have*;" "construction . . . *will or may* threaten") (emphasis added). Without more, Plaintiffs' conclusory statements about the risk of environmental harm fail to move the needle from speculative to certainly impending or from a generalized grievance to a particularized one. *See Gaar*, 86 F.3d at 453 ("[C]onclusory statements in the complaint, however, do not establish jurisdiction.").

  **2. *Plaintiffs' Affidavits on Reply.*** – Plaintiffs submitted affidavits and exhibits with their reply in an attempt to rectify the complaint's deficiencies. First and foremost, "[a] failure to allege injury on the face of a complaint deprives the plaintiff of standing." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 250 (5th Cir. 1989). But further, under this district's Local Civil Rules and the cases applying them, "it is generally considered improper for a party to introduce new evidence at the reply stage of a motion proceeding," as "the purpose of a reply brief is to rebut the nonmovant's response with argument." *Heatcraft Refrig. Prods. LLC v. Freezing Equip. Co., LLC*, 2020 WL 9763093, at *1 n.2 (N.D. Tex. 2020) (citing Local Civ. R. 7.2(e) and collecting cases). Accordingly, courts have discretion to either afford the nonmovant a meaningful opportunity to respond or decline to consider the new materials. *Id.*

  Typically, "a movant should not be permitted to cure [defects] by way of reply," and it is improper to "inject[] new evidentiary materials in a reply without affording the nonmovant an opportunity for further response." *Spring Indus., Inc., v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991). Courts have found that a "meaningful opportunity to respond" often includes permitting "the party with the burden on a particular

matter," in this case Plaintiffs, "to open and close the briefing." *Id.* at 239 (quoting *Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 291 (N.D. Tex. 1988) (en banc)).

Plaintiffs did not obtain leave before "injecting" their additional evidence, and there is no indication that the evidence was unavailable when the motion was originally filed. *See, e.g.*, *Heatcraft*, 2020 WL 9763093, at *1 n.2 (declining to consider evidence submitted with reply without leave on motion for temporary injunction). Further, the Federal Defendants' short surreply primarily addressed the impropriety of the evidence rather than its merits, and even a full response should have been "followed by an additional final reply brief by the movant." *Id.* at *1 n.2 (citing *Spring Indus.*, 137 F.R.D. at 239–40). A "meaningful opportunity to respond" has not been had here. Accordingly, the type of "rare circumstances" warranting the consideration of new evidence on reply are not present, and the Court declines to consider Plaintiffs' new affidavits. *Id.* (citing *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001)).

Thus, supported by only the contents of the complaint, Plaintiffs' environmental injuries are too speculative to support Article III standing.

### B. Plaintiffs' Condemnation-Related Harms Do Not Support Relief

Plaintiffs' first theory of harm based on the condemnation action is that taking their property in spite of the alleged statutory noncompliance violates their Fifth Amendment[5] rights. However, "an injury in law is not an injury in fact." *Transunion*, 141 S. Ct. at 2205.

---

[5] It is unclear whether Plaintiffs intend to invoke the Takings Clause, the Due Process Clause, or both when they allege that the "taking" of their property "deprives [them] of their right to procedural due process under the Fifth Amendment." Compl. ¶ 80.

MEMORANDUM OPINION AND ORDER – PAGE 7

In other words, the possible availability of a constitutional claim is too abstract to support a separate statutory cause of action. Instead, courts look to the concreteness of the underlying conduct. In statutory cases, "a close relationship" between Plaintiffs' injuries and "a harm traditionally recognized as providing a basis for a lawsuit in American courts" is evidence of a valid injury in fact. *Id.* at 2200 (quoting *Spokeo*, 578 U.S. at 340–41). Thus, while the abstract unconstitutionality of an eminent domain action is not an injury in fact in the APA context, it may support the idea that the property loss itself can be a sufficiently concrete harm. *See, e.g., Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 271–72 (D.C. Cir. 2015) (eminent domain can create injury in fact.).

However, Plaintiffs have not demonstrated the redressability of their economic losses resulting from the condemnation. First, the Court doubts its authority to enjoin the state proceedings; other district courts have concluded that the Anti-Injunction Act[6] bars such relief. *See, e.g., Bd. Of Supers. v. Circuit Ct.*, 500 F. Supp. 212, 214 (W.D. Va. 1980) (holding that the Act prevented enjoining state condemnation proceedings in part because the plaintiffs were parties to the state proceedings and could litigate the issue in the state forum); *Boerschig v. Trans-Pecos Pipeline, LLC*, 2016 WL 8674382, at *4 (W.D. Tex. 2016) (holding that the Act prohibits federal courts from enjoining state court condemnation proceedings that have already commenced), *aff'd on other grounds*, 872 F.3d 701 (5th Cir. 2017). And even if enjoining the state proceeding were permissible, other courts have nevertheless hesitated to do so. *See, e.g., City of Oak Creek v. Milwaukee*

---

[6] Codified at 28 U.S.C. § 2283.

*Metro. Sewerage Dist.*, 576 F. Supp. 482, 486 (E.D. Wis. 1983) (in the context of a due process and equal protection challenge to condemnation brought through 42 U.S.C. § 1983, observing that "[n]either the parties nor the Court could find an instance in which any judge had enjoined state or local condemnation proceedings under [section 1983]" and that the Court was "wary of becoming a zoning appeals board through its exercise of primary and pendant jurisdiction").

Nor have Plaintiffs shown that their injuries would be redressed by an order finding Defendants in violation of the statutes and ordering their compliance. The complaint offers only the bare assumption that the City may not proceed with condemnation if CWA and NEPA violations have occurred. *See, e.g.*, Compl. ¶ 16. But the City is not a private entity that derives its power of eminent domain from a statutory scheme alone, *see, e.g.*, *Gunpowder Riverkeeper*, 807 F.3d at 270–71, 272; it is a municipality that enjoys wide latitude from the State legislature to condemn private property for various purposes. *See City of Austin v. Whittington*, 384 S.W.3d 766, 772 (Tex. 2012). Plaintiffs have not cited any authority for the proposition that the Corps' purported noncompliance with its administrative obligations, even if attributable to the City as its local partner, vitiates the City's broader condemnation privileges granted to it by the State of Texas. Plaintiffs also have not explained how the City failed to follow required procedures, nor provided any reason to infer that the condemnation is beyond the scope of the City's authority under state law.[7] Accordingly, Plaintiffs have not carried their burden to explain how declaratory

---

[7] Even if they had, courts in Texas give great weight to a condemnor's determination that property is necessary for a valid public use. *Whittington*, 384 S.W.3d at 777.

MEMORANDUM OPINION AND ORDER – PAGE 9

relief or an injunction ordering Defendants to comply with the CWA and NEPA would be likely to halt the state proceedings.

Moreover, even if Plaintiffs could show that an injunction ordering compliance would likely stop the City from proceeding with the condemnation, it would suffer from the same Anti-Injunction Act issues already discussed. *See Am. Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 802 (5th Cir. 2000) (collecting cases for the proposition that if an injunction would be barred by section 2283, other relief having the same effect should also be barred); *see also Tex. Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988) (en banc) (to allow such relief "would be to transform section 2283 from a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts, to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand.").

Plaintiffs have not demonstrated that any available remedy would be sufficiently likely to relieve their alleged economic losses. Without a showing of redressability, those harms also cannot support Plaintiffs' Article III standing.[8]

---

[8] Further, even if Plaintiffs' economic harms supported Article III standing, they do not fall within the zone of interests of the CWA or NEPA, which were enacted to guard against environmental harms. *Gunpowder Riverkeeper*, 807 F.3d at 274–75 (CWA and NEPA); *Crosby Dredging*, 729 F. App'x at 294 (NEPA). The zone of interests test "applies to all statutorily created causes of action," including claims brought through the APA, as Plaintiffs have done here. Compl. ¶ 8; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014); *cf. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (5th Cir. 2000) (The CWA citizen suit provision, by contrast, extends standing to the "outer limits of Article III.").

CONCLUSION

Because Plaintiffs have not articulated a sufficient injury in fact that is redressable by their ultimate proposed remedies, the Court finds that they lack standing and accordingly denies preliminary injunctive relief.  The Court also dismisses the case without prejudice for lack of subject matter jurisdiction.  The Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Order if Plaintiffs believe they can cure the deficiencies addressed.  If Plaintiffs do not so amend, the Court will enter final judgment without further notice.

Signed February 22, 2023.

_____
David C. Godbey
Chief United States District Judge